IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALL BRANDS DISTRIBUTION, LLC
a Kansas Limited Liability Company,

        Plaintiff,

Civil Action No.

v.

VITAL PHARMACEUTICALS, INC.,
a Florida Corporation, d/b/a
VPX SPORTS or VPX,

**JURY TRIAL DEMAND**

        Defendant.

---

Todd E. Shadid, #16615
Attorney for Plaintiff
Klenda Austerman LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele: (316) 267-0331
Fax:  (316) 267-0315
Email: tshadid@klenalaw.com

Zachary B. Mack (MI Bar P62742)
Co-Counsel for Plaintiff
*Of Counsel*, Salvatore Prescott & Porter, PLLC
105 East Main Street
Northville, MI 48167
Tele: (248) 679-8711
Fax:  (248) 773-7280
Email: mack@spplawyers.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff, All Brands Distributions, LLC, by and through their undersigned attorney, and for their Complaint against Defendant Vital Pharmaceuticals, Inc. states as follows:

### The Parties; General and Jurisdictional Allegations; Venue

1. Plaintiff All Brands Distribution, LLC (hereinafter "Plaintiff" or "ABD") is a limited liability company formed under the laws of the State of Kansas, with a principal place of business located in Wichita, Kansas. All members of ABD reside in Kansas, within the jurisdiction of this Court.

2. ABD is a distributor of various beverages to customers throughout Kansas and the Kansas City metro area.

3. Defendant Vital Pharmaceuticals, Inc. is a corporation formed under the laws of the State of Florida, with a principal place of business located in Weston, Florida.

4. Defendant is a manufacturer of energy drinks and dietary supplements, and conducts business throughout the United States, including a substantial amount of business in Wichita, Kansas, and the Kansas City metro area, within the jurisdiction of this Court.

5. More specifically, Defendant has sold millions of dollars of its products to Kansas customers and consumers, including through ABD's efforts, and continues to sell its products to one or more distributors and customers/retailers located in Kansas, within the jurisdiction of this Court.

6. ABD's claims against Defendant in this action include breach(es) of contract, including the implied covenant of good faith and fair dealing; an alternative claim under the doctrine of promissory estoppel; an alternative claim under the doctrine(s) of unjust enrichment/quantum meruit; and a claim for declaratory relief.

7. This Court has specific personal jurisdiction over Defendant because it has purposefully availed itself of Kansas' laws through its activities in Kansas, including by, but not limited to, directly soliciting and contracting with ABD, and selling and

shipping millions of dollars of its products into Kansas, through its relationship with ABD.

8. The matter in controversy exceeds, exclusive of interest, costs, and attorney fees, the sum specified by 28 U.S.C. § 1332.

9. Jurisdiction is based upon diversity.

10. Venue is proper under 28 U.S.C. § 1391(b) and (c) because a substantial portion of the events or omissions giving rise to this action occurred, and continue to occur, in this Judicial District.

## Factual Background and Statement of Claims

11. ABD is an independent, full-service beverage distribution company.

12. Defendant's energy drinks are sold under tradenames including BANG and REDLINE.

13. In 2013 Defendant's Midwest Division Sales Manager, Joe Huntowski, solicited ABD to act as Defendant's exclusive distributor in the Wichita market, and various counties throughout Kansas, for Defendant's BANG and REDLINE products.

14. At all times pertinent hereto Joe Huntowski acted and held himself out as Defendant's agent, with express and/or implied authority to bind Defendant to an agreement with ABD.

15. One of the reasons ABD was of significant value to Defendant was ABD's relationship with QuikTrip Corporation.

16. Upon information and belief, QuikTrip owns and operates over 750 convenient stores throughout the United States, including approximately 39 in the Wichita market, and approximately 86 in the Kansas City metro market.

17. At the time Joe Huntowski approached ABD, Defendant did not have a business relationship with QuikTrip, and was not selling any of its products in QuickTrip stores.

18. QuikTrip is ABD's largest convenience store customer.

19. In short, ABD had the relationship and ability to obtain placement of Defendant's products in QuikTrip stores in the Wichita and Kansas City markets, which could ultimately lead to distribution of Defendant's products to QuikTrip stores nationally.

20. During the parties' initial negotiations, Defendant, through Huntowski, presented ABD with a proposed written Distributor Agreement.

21. During the parties' discussions and negotiations, Huntowski made it a point to inform ABD that certain of the initial proposed written contractual terms were just "meaningless words on a piece of paper", and that they would "not affect [the parties'] business or be brought up ever."

22. The parties have never executed a written Distributor Agreement.

23. Nevertheless, and based upon the parties' discussions, negotiations, and representations, ABD set out to establish a business relationship between Defendant and QuikTrip for the purchase and sale of Defendant's products.

24. As a result of ABD's efforts, Defendant's products were soon placed in all QuikTrip locations in Wichita, which was part of ABD's exclusive market.

25. Upon the recommendation of ABD, and based upon the success in the Wichita market, Defendant's products were thereafter placed in QuikTrip locations in Kansas City, which was also part of ABD's exclusive market.

26. Finally, and as a result of ABD's efforts, Defendant's products were ultimately placed in all QuikTrip locations corporate-wide, including outside ABD's exclusive market.

27. During the parties' relationship ABD expended significant monies on behalf of Defendant, including for such things as slotting fees; freight; and golf tournaments to promote Defendant's products.

28. The slotting fees were paid by ABD to QuikTrip, on behalf of Defendant, in order to secure retail space in QuikTrip stores in ABD's market on an annual basis.

29. Freight was also paid by ABD as a result of Defendant's inability to ship and fulfill order commitments on time.

30. ABD's expenditure of money for slotting fees, freight, and golf tournaments, among other things, was based upon the promise and agreement that Defendant would reimburse ABD either in cash, or via product equal to two times the cash value.

31. In fact, during the parties' relationship there was an actual practice and course of dealing of Defendant reimbursing ABD for these expenditures, including by providing ABD with free product equal to two times the cash value of monies expended by ABD.

32. Additionally, and throughout the parties' relationship, it was either expressly and/or impliedly agreed that Defendant would provide price protection to ABD. For example, if Defendant agreed to prices to customers in ABD's territory at lower than advertised pricing, Defendant would reimburse/credit ABD for any of its lost margin on the sales to those customers – including QuikTrip.

33. In or about the summer of 2018, ABD heard rumors of a competitor (LDF Sales & Distributing Inc.) taking over distribution of Defendant's products for ABD. At the

same time, Defendant, including through Huntowski, was acknowledging to other third parties that Defendant was contractually bound to ABD in ABD's markets.

34. Nevertheless, and based upon the rumors, ABD sought to obtain a written agreement from Defendant, in the initial form of a letter of intent, which memorialized the parties' prior oral agreements, course of dealings and understandings.

35. The oral agreements, course of dealings and understandings included material terms related to exclusivity; slotting fees; price protection; and a buyout for ABD should Defendant ever remove ABD as its exclusive distributor in ABD's territory.

36. In October of 2018 ABD principals Jeff Selzer and Steve Austin met with Huntowski and Sam Wilson (Defendant's Vice President of Sales & Distribution) at the National Association of Convenience Stores (NACS) show in Las Vegas, Nevada.

37. During the parties' meeting various topics were discussed. Huntowski also attempted to dispel the rumors that LDF was taking over ABD's territory.

38. More importantly, Huntowski assured ABD that the letter of intent was being sent over, and that it included the agreement on the buyout in the event ABD was ever replaced in the future.

39. Moreover, Huntowski informed ABD that the parties' agreement would include a provision prohibiting ABD from distributing competing products to those of Defendant's.

40. Additionally, samples of new products were given to ABD in order to secure pre-orders from customers.

41. Based upon the parties' discussions and agreement, and with the explicit understanding that the letter agreement was being sent over, ABD was forced to scale

back and/or reject other ongoing and potential distributor relationships with other manufacturers.

42. With the same understanding, ABD, at its expense, set up vendor numbers, necessary paperwork and channels on behalf of Defendant, for additional customers/chains for distribution of Defendant's products in ABD's markets, including for Kroger (Dillon's); Wal-Mart; Circle K; CV Foodliner; Alta; Yesway; and Bucky's.

43. Processing the paperwork to begin distribution was time intensive, and was required to be completed to allow for delivery of Defendant's products in the 4th Quarter of 2018, and into 2019 and beyond.

44. ABD's compensation for these services was to be the margins it would receive on the sales of Defendant's products in end of 2018 to these customers/chains in ABD's markets, and into 2019 and beyond.

45. Furthermore, ABD continued its efforts to secure better/more retail space in QuikTrip stores by working to revise the retail set of Defendant's products within QuikTrip's plan-o-gram for the 2019 buying season.

46. Based upon ABD's efforts, QuikTrip agreed to a test in the Kansas City market.

47. The test of the new reset required ABD to conduct more in-person store visits, and to funnel product from Wichita to Kansas City, at ABD's expense, in order to make sure the test was successful.

48. Funneling product from Wichita to Kansas City was necessary because of Defendant's inability to keep up on orders of its products, resulting in multiple out of stock situations.

49. Funneling product from Wichita to Kansas City also had the negative effect of causing other customers of ABD's to suffer out of stock situations.

50. Despite all of the aforementioned discussions, and effort and expense by ABD, in December of 2018 Defendant notified ABD that it was terminating its relationship with ABD, effective 11:59:59 p.m. ET, December 31, 2018.

51. ABD has not breached any material terms of any agreement between ABD and Defendant.

## COUNT I – BREACH OF CONTRACT AND IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING

52. ABD repeats and re-alleges the above paragraphs.

53. Defendant entered into agreements with ABD, but failed in material respects to deliver upon its obligations to ABD.

54. Defendant has breached its agreements with ABD, as well as the implied covenant of good faith and fair dealing, including by terminating the parties' relationship in the manner in which it did; failing and refusing to reimburse ABD for slotting fees paid on Defendant's behalf; failing and refusing to compensate ABD for free fills and returns incurred on Defendant's behalf; failing and refusing to price protect ABD's margin, and reimburse ABD for same; failing and refusing to reimburse ABD for golf tournament expenditures; and failing and refusing to reimburse ABD for freight charges.

55. As a result of Defendant's breach(es) of the parties' agreement(s), ABD has incurred substantial damages and will continue to suffer such damages in the future.

WHEREFORE, ABD demands judgment against Defendant in an amount in excess of $75,000.00, or whatever different amount to which ABD is found to be entitled, together with costs, interest and attorney fees so wrongfully incurred.

## COUNT II – PROMISSORY ESTOPPEL

56. ABD repeat and re-allege the above paragraphs as if fully incorporated herein.

57. Defendant, including through its agent, made promises to ABD under circumstances which were intended to and reasonably expected would be relied upon by ABD.

58. ABD was reasonable in relying on the promises, and acting and/or refraining to act in reliance on the promises.

59. More specifically, in reliance upon the promises, ABD proceeded to pay slotting fees on behalf of Defendant; provide free fills and returns of products on Defendant's behalf; continued to order substantial amounts of Defendant's products for delivery to customers; paid for freight on the shipment of Defendant's products; prepared new vendor information and set up additional channels and customers/chains for the distribution of Defendant's products; and solicited pre-orders for products on Defendant's behalf.

60. Furthermore, in reliance upon the promises, ABD refrained from engaging other manufacturers of products which compete with Defendant, and withdrew its support for others, at a significant financial detriment and loss to ABD.

61. Aside from the financial loss to ABD, by refraining from engaging other manufacturers for the sale and distribution of products within ABD's territory, and that directly compete with Defendant, Defendant has been conferred the benefit of less competition within the market.

62. Further, and by relying on Defendant's promises, ABD continued to invest substantial amounts of time, effort, expense and good will to promote the reset of Defendant's products at QuikTrip for the 2019 buying season, resulting in more/better retail space for Defendant's products.

63. Failure or refusal to enforce Defendant's promises would be virtually to sanction the perpetration of fraud upon ABD, or would otherwise result in injustice.

WHEREFORE, ABD demands judgment against Defendant in an amount in excess of $75,000.00, or whatever different amount to which ABD is found to be entitled, together with costs, interest and attorney fees so wrongfully incurred.

## COUNT III – UNJUST ENRICHMENT/QUANTUM MERUIT

64. ABD repeat and re-allege the above paragraphs as if fully incorporated herein.

65. In the alternative, and should the trier of fact determine the parties did not reach a meeting of the minds concerning the consideration, compensation or reimbursements to be provided or paid to ABD as set forth above, ABD is entitled to the consideration, compensation or reimbursements under the doctrine of unjust enrichment or quantum meruit, since otherwise Defendant would reap the benefits of ABD's expenditures and services without proper compensation.

66. More specifically, Defendant was conferred a benefit by ABD, including but not limited to the establishment of a substantial customer base to which Defendant is able to sell its products to consumers; by the establishment of a significant and ongoing relationship with one of Kansas' largest convenience store chains, QuikTrip; by securing retail space/slotting in QuikTrip stores for the 2019 buying season; by preparing new vendor information and setting up additional channels and

customers/chains for the distribution of Defendant's products; and by securing pre-orders of Defendant's products to other customers.

67. Defendant has knowledge of and appreciates the benefit of ABD's aforementioned services and expenditures.

68. Defendant has accepted and retained the benefits of ABD's services and expenditures under circumstances that would make it inequitable for Defendant to retain the benefits without payment of their value to ABD.

WHEREFORE, ABD demands judgment against Defendant in an amount in excess of $75,000.00, or whatever different amount to which ABD is found to be entitled, together with costs, interest and attorney fees so wrongfully incurred.

## COUNT IV – DECLARATORY RELIEF

69. ABD repeat and re-allege the above paragraphs as if fully incorporated herein.

70. There is a judiciable controversy between the parties as to their respective rights and obligations under the parties' respective agreements, both past, present and future.

71. ABD and Defendant have adverse interests as they relate to the controversy.

72. ABD has a legally protectable interest in the controversy based upon the parties' agreements.

73. The controversy between the parties is ripe for judicial determination, including the amount currently owed to ABD by Defendant, as well as the amount(s) to be owed to ABD in the future by Defendant.

## JURY DEMAND

ABD hereby demands a jury trial in this matter.

Respectfully submitted:

*s/Todd E. Shadid*
Todd E. Shadid, #16615
Klenda Austerman LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
Tele: (316) 267-0331
Fax:  (316) 267-0315
Email: tshadid@klendalaw.com
*Attorney for Plaintiff*