IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALL BRANDS DISTRIBUTION, LLC,
a Kansas Limited Liability Company,

    *Plaintiff,*

vs.

VITAL PHARMACEUTICALS, INC., a
Florida Corporation, d/b/a/ VPX SPORTS
or VPX,

    *Defendant.*

Case No. 18-1354-EFM

**MEMORANDUM AND ORDER**

From 2014 to 2018, Plaintiff All Brands Distribution, LLC distributed the energy drinks of Defendant Vital Pharmaceuticals, Inc. in the Wichita, Kansas area. After the distribution arrangement was terminated, Plaintiff brought claims of breach of contract, unjust enrichment, and promissory estoppel, and the jury returned a verdict against Defendant in the total amount of $721,031.14. Defendant has renewed its Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b). (Doc. 80). Plaintiff has moved to amend the judgment pursuant to Rule 59, seeking to add $267,583 in prejudgment interest. (Doc. 79).

**I.    Factual and Procedural Background**

Plaintiff alleges that it was induced to become the distributor for Defendant's Bang related energy drinks in the Wichita, Kansas and surrounding territories. While this relationship

lasted and through its efforts, Plaintiff alleges, Defendant was able to gain entry into the Wichita market, in particular gaining valuable shelf space in QuikTrip convenience stores. Plaintiff contends that Defendant agreed to several terms which it considered essential, including a buyout provision to pay Plaintiff compensation when or if Plaintiff terminated the relationship, and a "price protect" provision which would provide compensation to protect Plaintiff's profit margin during price cutting promotions. Plaintiff also contends that Defendant agreed to pay for additional expenses incurred by Plaintiff, including "slotting fees" charged by QuikTrip, shipping and freight charges, and the promotional fees associated with events including a golf tournament.

Defendant has denied that any enforceable agreement existed, and denies in particular that the parties reached a binding agreement as to the essential terms of the alleged contract.

The jury heard the testimony of the principal officers of Plaintiff, Jeff Selzer and Brian Austin, as well as the company's Controller, Brett McCoy, and its Operations Manager, Nikki Medina. Defendant presented the testimony of its Executive Vice President of Sales, Eugene Bukovi, as well as the prior deposition testimony of its general counsel, Francis Massabki.

At the conclusion of the trial, the jury awarded Plaintiff $303,676 for lost profit margin for Defendant's failure to price protect, and $298,108 to compensate for the unpaid buyout provision, both under Plaintiff's claim for unjust enrichment. The jury awarded $93,670 damages in slotting fees, and $23,220.14 for shipping and freight charges, both under Plaintiff's breach of contract claim. Finally, the jury awarded $2,357 for promotional fees for a golf tournament, under Plaintiff's promissory estoppel claim.

## II. Legal Standard

Under Federal Rule of Civil Procedure 50(a)(1), the Court may issue a judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Thus, "[j]udgment as a matter of law is only appropriate if the evidence points but one way and is susceptible to no reasonable inferences" that may support the opposing party's position.[1] "A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury."[2] Rule 50(b) allows the party that made a Rule 50(a) motion for judgment as a matter of law during the trial to "file a renewed motion for judgment as a matter of law" after the trial and include an alternate motion for a new trial under Rule 59.

Federal Rule of Civil Procedure 59(a) allows the court to grant a new trial on motion "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal courts." Whether to grant a motion for new trial under Rule 59(a) is up to the sound discretion of the trial court.[3] Such a motion is "not regarded with favor and should only be granted with great caution."[4] In reviewing a motion for new trial, the court must view the evidence in the light most favorable to the prevailing party.[5] The party seeking to set aside a jury verdict must demonstrate trial errors constituting prejudicial error or demonstrate that the verdict

---

[1] *Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1228 (10th Cir.2009) (internal quotations and citations omitted).

[2] Fed. R. Civ. P. 50(a).

[3] *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hinds v. Gen'l Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993).

[4] *Paradigm Alliance, Inc. v. Celeritas Techs.*, LLC, 722 F.Supp.2d 1250, 1258 (D. Kan. 2010) (internal quotations and citations omitted).

[5] *Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993); *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006).

is not based on substantial evidence.[6] In making that determination, the Court's "inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence."[7] The Court will "ignore errors that do not affect the essential fairness of the trial."[8]

Rule 59(e) of the Federal Rules of Civil Procedure permits a party to request reconsideration of a final judgment. The Court may grant a Rule 59(e) motion when it "has misapprehended the facts, a party's position, or the controlling law."[9] Rule 59(e) is not an appropriate vehicle for revisiting issues already considered or arguing matters "that could have been raised in prior briefing."[10]

### III.     Analysis

**A.     Defendant's Motion for Judgment as a Matter of Law**

Defendant argues that Plaintiff's unjust enrichment claim for lost profit margin fails as a matter of law because the evidence failed to show that Plaintiff conferred a benefit upon Defendant. Defendant further argues that it never held or retained the $303,676 in lost profit margin. "If anyone benefitted in that amount," it argues, "it was QT." Similarly, Defendant argues that Plaintiff has failed to show that Plaintiff conferred a benefit upon Defendant in the form of buyout damages. Finally and more generally, Defendant argues there was insufficient evidence to support a claim for Plaintiff on either its breach of contract or promissory estoppel claims.

---

[6] *White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir. 1983).

[7] *Black v. Hieb's Enters., Inc.*, 805 F.2d 360, 363 (10th Cir. 1986).

[8] *McDonough*, 464 U.S. at 553.

[9] *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

[10] *Id.* (*quoting Servants of the Paraclete*, 204 F.3d at 1012).

Unjust enrichment under Kansas law requires proof that (1) the plaintiff conferred a benefit conferred upon the defendant; (2) the defendant retained the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.[11]  The second element includes "an appreciation or knowledge of the benefit by the defendant."[12]

Under Kansas law, "[t]he proper measure of damages for unjust enrichment is restitution of the value of the benefit conferred upon the defendant."[13]  Restitution in this context means "rectify[ing] unjust enrichment by restoring the other to the position he or she formerly occupied either by the return of something he or she formerly had *or* by the receipt of its equivalent in money."[14]  Thus, "successful unjust enrichment plaintiffs will be placed in the same position that they would have been had the defendant not been unjustly enriched. In other words, for unjust enrichment claims, the ultimate goal is restoration not penalization."[15]

Given the controlling standard of review, the Court finds unpersuasive Defendant's general arguments against the existence of a contract or at least an enforceable promise as to the distributorship.  The present action ultimately turned on the credibility of the assertions by the principal owners and operators of Plaintiff, Jeff Selzer and Steve Austin, that they reached an agreement with Defendant's Regional Sales Manager, Joe Huntowski, for All Brands to distribute Bang and related energy drinks, and that this included various protections for Plaintiff.

---

[11] *See Estate of Draper v. Bank of America, N.A*., 288 Kan. 510, 205 P.3d 698, 706 (2009).

[12] *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.,* 259 Kan. 166, 910 P.2d 839, 847 (1996) (quotation and citation omitted).

[13] *Walsh v. Weber*, 2016 WL 4750102, at *23 (Kan. Ct. App. 2016) (internal quotation, emphasis, and citations omitted).

[14] *Id*.  (internal quotation, citation, and alteration omitted, emphasis in *Walsh*).

[15] *Id.*

As noted earlier, Selzer and Austin both testified at trial. Both testified consistently, and both described extensive oral communications with Huntowski over the telephone, in addition to their email communications. Their testimony as to those oral discussions was at least partially corroborated by the emails introduced at trial. Huntowski, no longer employed by Defendant, did not appear. Given the absence of any evidence substantially contradicting their testimony, the jury could and did credit the testimony of Selzer and Austin as to the nature of the commitments between the parties.

Defendant's Motion focuses mainly on the jury's award of compensation based on Plaintiff's claim of unjust enrichment. Under this theory of relief, the jury awarded damages for lost margin and for a post-termination buyout. Defendant argues that these awards cannot stand because they are not based on direct evidence of the value of any benefit conferred to Vital Pharmaceuticals.

The buyout provision was a formula included in the contract which expressly defined "fair compensation" as a specific dollar value (varying for different beverages) multiplied by the total number of beverage cases sold in the preceding 12 months. This formula never changed during the parties' relationship, although at one point Huntowski promised the buyout formula would soon be increased. Selzer testified that this was a standard buyout provision, "just what we do in our industry."

Selzer described how a similar buyout provision worked with respect to a prior drink product, Xyience, which Plaintiff distributed for another customer, indicating how the buyout was compensation for Plaintiff's efforts in building market share for that customer.

> But basically with Xyience we started at case zero, so it wasn't being distributed, so everything that we developed in that market we took a lot of time to do and a lot of sampling and a lot of work to gather that and distribute that.

-6-

> And as we built that market up, what a buyout does for us is if suddenly they decide that they want to move on to a different carrier or different distributor like ourselves, that's a—a lot of people will use the term severance for us because there's an interruption in that cash flow and that business for you. So that's just their way of buying that business out from you, and you use that money to go on to your next project and keep going.

Austin compared the buyout provision to alimony:

> This relationship. We knew it wouldn't last 20 years, because what happens in this industry is you start a product, you grow the product, and at some point, it's like a marriage, so you guys get married, and together you grow the product. But then let's say five years later, that marriage just isn't quite working out, you have a buyout and you have other terms in the agreement so that your spouse is not left with nothing because they had provided a significant amount of work, effort, and everything else to get you to that point.

He later testified:

> I knew likely at some point we were going to part ways, they're going to sell. I think they had an offer one time from somebody. They're going to sell at some point. I just want to be paid fairly for my efforts, and that buyout is why Jeff is, Christmas Eve, out delivering this product. Even though they didn't get a contract we could sign, we had these key items agreed to. He wouldn't be out he wouldn't be out there away from his family if they hadn't made promises. And we got them into the midwest buying groups, we got them into multiple distributors, QT, we got 'em started here in Kansas, they ended up getting into everywhere and it's based on our efforts. But I knew we weren't going to be their distributor forever, but we wanted paid for our fair efforts.

The price protection provision was similarly described as a necessary element of the distributor relationship, where Plaintiff was expending substantial efforts to boost Bang sales, but remained at the mercy of potential promotional agreements between Defendant and QuikTrip. The provision was intended to protect Plaintiff's margin during events where the sales price at QuikTrip would dip below the everyday, normal price, potentially reducing Plaintiff's margin to zero. The danger was also made acute because individual QuikTrip store managers would issue additional orders for the heavily discounted product to stock up, forcing Plaintiff to ship additional cases of the product for little if any gain.

Defendant's argument that any price promotions benefitted QuikTrip *only* is unpersuasive. Certainly the effect of the promotions helped QuikTrip, but this does not mean they did not also advance the Defendant's interest. As Austin testified, in the price promotions "they're trying to benefit QuikTrip and they are, but it is taking more and more money out of our pocket. And those promos are Bang promos, not All Brands."

These promotions were not unilateral gifts to QuikTrip; they were mutually advantageous promotions which furthered the interests of both parties—by squeezing the margin of the intermediary, the distributor.

During his examination, Bukovi was asked whether it was not true that Defendant was still "reaping the benefit of [Plaintiff] taking it from zero to the four shelves [at QuikTrip] that you have today." Bukovi did not respond by disagreeing with the idea that Defendant had benefited during the course of its contract with Plaintiff, but claimed that benefit was due to the quality of Bang and related products, as well as the fact that "[w]e had some great marketing."

But some of that "marketing" would have been just the price discount promotions agreed to between Defendant and QuikTrip—discounts which the price protection arrangement between Plaintiff and Defendant was designed to protect.

When Defendant's agent Huntowski sought out Plaintiff to distribute Bang in Kansas, his company then had zero shelf access at the lucrative QuikTrip market. When Defendant terminated its relationship with Plaintiff, Bang and related products occupied four shelves at QuikTrip. Since the termination, Defendant has not increased its presence by additional shelving. The jury could have easily concluded that Defendant not only benefitted greatly *during* its contract with Plaintiff, but that it benefitted *by* the contract.

In sum, the price protection and buyout provisions were both key ingredients in luring Plaintiff into distributing Bang. There is evidence from which the jury could have reasonably decided Plaintiff regarded these provisions as absolutely essential to any relationship with Defendant.

There is strong confirmation of the buyout provision in the September 5, 2013 email from Huntowski to Bukovi, discussing the status of the negotiations with Plaintiff, and stating, "need to take out minimums, *leave buyout* and add 30-day out clause." (Emphasis added). Bukovi emailed another Vital manager the following day, ""I had Jack agree to taking out minimums, leave buyout and add 30-day out clause."

As the Court observed in provisionally denying Defendant's Rule 50(a) motion at the conclusion of Plaintiff's evidence, the price protection claim rests on less solid foundation. The jury could have viewed the emails exchanged between the parties as reflecting an offer and counteroffer, reflecting an inability to agree on the material terms of the transaction. But the jury was not required to do so, given the testimony of Selzer and Austin as to their frequent, ongoing telephone communications with Huntowski.

According to Austin, based on those conversations, Plaintiff and Defendant had agreed to the material terms, which he testified included the provisions for a buyout and price protection. "There was no question. I'd like to have some additional terms, but we had what we needed."

This was a credibility question, and jury evidently found no reason to disbelieve the affirmative testimony of Selzer and Austin. Accordingly, there was evidence to support the jury's findings for plaintiff on each of its three claims of breach of contract, promissory estoppel and unjust enrichment.

A more substantial issue is raised by Defendant's argument that there is insufficient evidence for the jury to quantify the damages it returned for the buyout and price protection provisions; these were the largest parts of the total damages awarded. This issue has some potential resonance because, although in the first part of the Verdict the jury found for Plaintiff on each of its three claims for relief (breach of contract, promissory estoppel, and unjust enrichment), in the final portion it was asked to assign damages with the following instruction:

> If you answered "Yes," please list the damages, if any, you award for the claims for which you found for the Plaintiff. For any category of damages you may award, you may only select one claim as the basis for that award.

The Verdict then listed the five damage categories claimed by Plaintiff, and asked the jury to assign for each category to a claim: "(Breach of Contract, Promissory Estoppel, or Unjust Enrichment/Quantum Meruit; Choose *only* one for each Category)." As noted earlier, the jury specified that the two largest awards, the buyout provision and the price protect award, were rendered under the unjust enrichment claim.

Defendant contends that these awards cannot accurately reflect an unjust enrichment verdict, as they are rooted in the formula contained in the parties' contract. Thus, they do not measure any benefit Defendant may have obtained under the contract. Defendant relies in particular on the observation made by the court in *Brown v. K&L Tank Truck Serv., Inc.*[16] that "[t]he proper measure of damages on this [unjust enrichment] claim is not the damages incurred by the [plaintiffs] from the corporation not performing under the alleged contract (in other words, the benefit of the bargain) but the value of the benefit he conferred."[17]

---

[16] 2017 WL 3839414 (D. Kan. 2017).

[17] *Id*. at *6.

But this is consistent with the instructions issued to the jury. In Instruction 21, the Court stated:

> If you decide that All Brands is entitled to relief under one of the claims it has advanced, you should consider the amount of compensation to award. If you find for Plaintiff on its breach of contract or its promissory estoppel claims, Plaintiff is entitled to such sum as you find will fairly and justly compensate it for the damages you find were sustained as a direct result of the breach of contract or the failure to honor its promise. *If you find for Plaintiff on its unjust enrichment/quantum meruit claim, Plaintiff is entitled to recover the amount of the benefit conferred on Defendant.*

(Emphasis added). The Court properly informed the jury that to assess damages on Plaintiff's unjust enrichment claim, it must assess how Defendant may have unfairly benefitted from the relationship.

Defendant errs in suggesting that the buyout and margin protection provisions are entirely unrelated to the benefit obtained by Defendant. Those provisions remain a useful template and helpful proxy to determine the value of the benefit received by Defendant. Defendant obtained a substantial benefit by increasing its share of the Wichita market, and the jury could have reasonably concluded that the best way to value that benefit was by reference to the burden Defendant willingly agreed to undertake in order to induce Plaintiff to become its distributor. If Defendant was willing to incur those costs (including a buyout and price protection), those costs might be reasonably deemed a measure of the benefit Defendant obtained by Plaintiff's efforts.

The Verdict form, to which the parties agreed, forced the jury to pick only one form of relief. Accordingly, the selection of unjust enrichment for the buyout and price protection provisions does not mean the jury decided there was no agreement or contract as to those terms. As noted above, the evidence was sufficient for a reasonable jury to find that the parties had agreed to the essential terms of the agreement, and those terms included a buyout and price

protection. That being the case, the jury could have reasonably used the numbers from those provisions as a fair measure of the benefit Defendant obtained by the Plaintiff's efforts.

Thus, there was evidence from which the jury could have concluded that there was a benefit conferred on Defendant—getting into the Wichita marketplace. Once it was established, it abandoned the distributor who got it there. The calculations of the jury are a reasonable basis for determining the value of what Defendant received from the relationship, because it is what Defendant was willing to pay to enter into the transaction.

Defendant supplies no authority for the proposition that, in claims of unjust enrichment, the calculation of the benefit must be always occur through some evidence wholly unrelated to the reasonable expectation of compensation of the parties. The expectation of compensation by a plaintiff is not irrelevant, but is in fact integral to the concept of unjust enrichment itself. This is reflected in the Kansas Pattern Instructions, which explain with respect to unjust enrichment that "[w]here a party furnishes goods or performs services for another and has a reasonable expectation of being compensated, the one benefitted is responsible for paying the reasonable worth of the goods provided or services rendered."[18]

There is evidence from which the jury could rationally determine that Plaintiff reasonably expected to be compensated through the buyout and margin protection provisions. Further, the jury could reasonably find that Defendant benefitted substantially through its relationship with Plaintiff, gaining substantial market share through Plaintiff's efforts, and that under the circumstances of the case it would be inequitable for Defendant to retain those benefits without compensating Plaintiff. These circumstances include Defendant's inducing Plaintiff to undertake

---

[18] PIK–Civil 4th § 124.17.

the distributorship through specific promises, including buyout and margin protections, pursuant to an agreed-upon compensation formula.

Of course, Defendant disputes the existence of such an agreement, but under the controlling standard of review, the Court views the evidence in the light most favorable to Plaintiff. As stated before, the jury could have reasonably found the testimony of Selzer and Austin credible, that the buyout and margin protection provisions were essential, and had been agreed to by Huntowski.

### B.     Plaintiff's Motion to Alter and Amend

Plaintiff seeks to alter the Judgment to include $238,433.81 in prejudgment interest pursuant to K.S.A. § 60-201. Plaintiff originally sought a higher amount based on compound interest, but acknowledges in its Reply that the statute allows for simple interest only. Plaintiff contends that its damages were liquidated and readily ascertainable from the date the present action was filed, December 31, 2018. Plaintiff thus seeks interest based on the statutory rate of 10% multiplied for the period between that date and the entry of Judgment, April 22, 2022.

Defendant argues that Plaintiff has waived any claim to prejudgment interest by failing to raise the issue in the Pretrial Order, citing the Tenth Circuit's decision in *O'Tool v. Genmar Holdings, Inc.*[19] Alternatively, Defendant agues that prejudgment interest should not be awarded from December 31, 2018, because Plaintiff's damages were not liquidated when it filed this action, but only (as to the price protection and slotting damages) when the jury awarded them, and (as to buyout damages) not until February 8, 2021, when Plaintiff first advised Defendant of specific buyout damages.

---

[19] 387 F.3d 1188, 1207 (10th Cir. 2004).

The Court finds that Plaintiff has not waived its entitlement to prejudgment interest. The case relied upon by Defendant, *O'Tool*, did not involve a request for *pre*-judgement interest. The district court granted plaintiffs post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961, but held that plaintiffs had waived any right to a higher rate purportedly agreed to by the parties. The Tenth Circuit held that the district court had not abused its discretion in denying this request for what it termed an "extremely high rate of interest" following judgment.[20]

The case not only involved post- rather than pre-judgment interest, the potential application of Rule 54(c) was not addressed in that action. That rule provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in the party's pleadings*."

In *Dalal v. Alliant Techsystems, Inc.*,[21] the Tenth Circuit directly addressed the issue as to prejudgment interest, and cited Rule 54(c) in concluding that the district court there had not abused its discretion in granting an award of prejudgment interest, even though the plaintiff had not expressly requested in in the pretrial order.[22] This Court has cited *Dalal* in rejecting a similar argument to that of the Defendant, observing that "even if the Pretrial Order could be construed so as not to include a request for prejudgment interest, it is not fatal to Plaintiff's request."[23] Other judges in the District of Kansas have taken the same view.[24]

---

[20] *Id*. at 1207.

[21] 72 F.3d 137, 1995 WL 747442 (10th Cir. 1995).

[22] *Id*. at *6.

[23] *Rajala v. Gardner*, 2014 WL 4840771, at *5 (D. Kan. 2014), *aff'd*, 661 F. App'x 512 (10th Cir. 2016).

[24] *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 2009 WL 435111, at *14-15 (D. Kan. 2009) ("In this case, plaintiffs are entitled to an award of prejudgment interest; thus, the failure to request such relief in the pretrial order is not dispositive."); *Guang Dong Light Headgear Factory Co. v. ACI Int'l Inc*., 2008 WL 1924948

In light of Rule 54(c), the Court finds that Plaintiff has not waived its right to prejudgment interest. The issue then becomes whether Plaintiff is indeed entitled to such relief under Kansas law.

K.S.A. § 16-201 provides for prejudgment interest on liquidated claims, at the rate of 10% per annum, where no other interest rate was agreed to by the parties.[25] "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation."[26] The fact that a good faith controversy exists as to liability does not necessarily preclude a grant of prejudgment interest.[27]

The Court grants Plaintiff's request for prejudgment interest as to the awards for slotting fees, shipping and freight charges, and the promotional expenses associated with a golf tournament. These awards were all rendered under Plaintiff's claims for breach of contract or promissory estoppel. In each case, the measure of damages is logically and necessarily tied to the contract, or the promises made in conjunction with the contract, and the expenses incurred by Plaintiff. These damages were subject to ready calculation as of the date the present action was filed, and may be properly considered as liquidated.

The Court denies Plaintiff's request for prejudgment interest as to the awards for lost profit margin and buyout protection. In both cases, the jury expressly premised its award upon Plaintiff's claim of unjust enrichment.

---

(D. Kan. 2008) (citing *Dalal* and concluding plaintiff "did not waive its right to request prejudgment interest by failing to include it in the Pretrial Order.").

[25] *Hamilton v. State Farm Fire and Casualty Co*., 263 Kan. 875, 953 P.2d 1027, 1033 (1998).

[26] *Kilner v. State Farm Mut. Auto. Ins. Co*., 252 Kan. 675, 847 P.2d 1292, 1300 (1993) (citation omitted).

[27] *Crawford v. Prudential Ins. Co. of America*, 245 Kan. 724, 783 P.2d 900, 910 (1989).

As discussed in relation to Defendant's Motion for Judgment as a Matter of Law, the award as the buyout and lost margin is supported by evidence which would have allowed the jury to use the contract formulas as a rough measure of how Defendant benefitted during the relationship, through its entry into the Wichita market. But it is a rough measure only, and the jury could have reached a different conclusion as to the benefit Defendant obtained from Plaintiff. The value Defendant derived from the contract is not readily ascertainable, and cannot be considered as liquidated.

Plaintiff argues that the Court has discretion to award prejudgment interest even if the amount in controversy is unliquidated. Both cases cited by Plaintiff, however, involved restitution of a specific, identifiable fund or property. In *Lightcap v. Mobil Oil Corporation*,[28] plaintiffs sought recovery of specific royalties for specific oil wells. The Kansas Supreme Court affirmed an award of prejudgment interest as to the withheld royalties, stressing that "Mobil and its predecessor made active use of plaintiffs' money, and plaintiffs were deprived of that use."[29]

In *Farmers State Bank v. Production Credit Association of St. Cloud*,[30] a rancher moved a herd of cattle from Kansas to Minnesota, with the assistance of a lender there. After learning the herd had been sold, a secured lender in Kansas sued to recover the proceeds of the sale. The district court found for the plaintiff, and the Supreme Court held that the district court had not abused its discretion in also awarding prejudgment interest on the proceeds. Citing *Lightcap*, the court recognized "the discretion to award prejudgment interest on an unliquidated claim when

---

[28] 221 Kan. 448, 562 P.2d 1 (1977).

[29] *Id.*, 562 P.2d at 16.

[30] 243 Kan. 87, 102, 755 P.2d 518 (1988).

the defendant has had use of the money, the plaintiff has been deprived of the use of the money, and the order is necessary to award full compensation."[31]

Here, as discussed earlier, Defendant did benefit from its relationship with Plaintiff by growing its market share, but there was no specific property, money or fund which Defendant received from Plaintiff. The general rule in Kansas remains that "[a]n unliquidated claim for damages generally does not draw interest prior to judgment or some other means of liquidation."[32] The conclusion is further supported by prior Kansas cases, which have observed that unjust enrichment claims are generally not appropriate for prejudgment interest. "A judgment based on quantum meruit does not draw prejudgment interest because the amount due is not liquidated until the trial court's determination of the amount."[33]

Plaintiff is entitled to prejudgment interest on the jury's award of slotting fees, shipping and freight charges, and golf tournament promotional expenses, which add up to $119,247.14 for the period from December 31, 2018 through April 22, 2022. Calculating simple interest at 10 percent per annum, the Court finds that Plaintiff is entitled to $39,498.57 in prejudgment interest.

Plaintiff also asks that the amended judgment continue to reflect that the judgment includes post-judgment interest at the rate of 1.94% as provided by law. Defendant, of course, argues judgment should be entered in its favor rather than the Plaintiff's, but has advanced no reason why a judgment in favor of Plaintiff should not include postjudgment interest. Such an

---

[31] *Id.*, 755 P.2d at 528.

[32] *Id.* (citing *Kearney v. Kan. Pub. Serv. Co.*, 233 Kan. 492, 665 P.2d 757, 769 (1983)). *See also Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 157 P.3d 1109, 1118 (2007).

[33] *Miller v. Botwin*, 258 Kan. 108, 899 P.2d 1004, 1012 (1995). *See also Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, 624 P.2d 420, 432 (1981) ("A judgment based upon quantum meruit does not draw prejudgment interest.").

award of post-judgment interest is automatic under 28 U.S.C. § 1961(a),[34] and the Amended Judgment shall continue to reflect the award.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment as a Matter of Law (Doc. 80) is hereby **DENIED**; Plaintiff's Motion to Alter or Amend the Judgment (Doc. 79) is **GRANTED** in part and **DENIED** in part as provided herein, and the Court directs an Amended Judgment be entered in accordance with this Order.

**IT IS SO ORDERED**.

Dated this 24th day of August, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[34] *See Ross v. Huhtamaki, Inc.*, 2022 WL 1102650, at *6 n. 12 (D. Kan. 2022).